# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER REYNOLDS, | CASE NO. 1:10-cv–00051-AWI-GBC (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED |
| v. | |
| H.A. RIOS, JR., et al., | |
| Defendants. | Doc. 21 |
| / | OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

**Findings and Recommendations**

**I. Procedural Background**

On January 11, 2010, Plaintiff Christopher Reynolds ("Plaintiff"), a federal prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). On February 22, 2011, Plaintiff filed a first amended complaint, alleging that Defendant H.A. Rios ("Defendant") erroneously rejected two magazines on the basis of nude content. Pl. Am. Compl. at 5, Doc. 9. On March 1, 2011, the Court found a cognizable claim against Defendant for First Amendment interference with mail. Doc. 10. On September 8, 2011, Defendant filed a motion to dismiss. Doc. 21. On September 20, 2011, Plaintiff filed objections to Defendant's motion to dismiss. Doc. 25. On September 26, 2011, Defendants filed a reply to Plaintiff's objections. Doc. 26. On October 7, 2011, Plaintiff filed a sur-reply to Defendant's response. Doc. 27.[1]

---

[1] The Court will not consider the content of Plaintiff's sur-reply, since filing a "sur-reply" is a violation of Local Rule 220.

## II. Legal Standard for Motion to Dismiss

A motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, __, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Conservation Force*, 646 F.3d at 1242; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The Court must accept the well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007); *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 996-97; *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153 (9th Cir. 2000). However, while prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010), courts are not required to indulge unwarranted inferences, *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. *Iqbal*, 129 S. Ct. at 1949.

## III. The Pleadings On File

In Plaintiff's amended complaint, he alleges that Defendant erroneously rejected two magazines, *W*, and *Esquire*, on the basis of nude content. Pl. Am. Compl. at 5, Doc. 9. Plaintiff stated that the Warden cited Bureau of Prisons ("BOP") Program Statement 5266.10 and 28 C.F.R. § 540.72. *Id.* at 4. Plaintiff attaches the rejection letters to his complaint, which cite the *Ensign Amendment*. *Id.* at 8-9. Plaintiff contends that Defendant arbitrarily rejected Plaintiff's magazines while the BOP "allows nudity" by permitting the distribution of sports magazine swimsuit issues and lingerie catalogs. *Id.* at 5.

In Defendant's motion to dismiss, Defendant Warden Rios contends that in rejecting

Plaintiff's magazines, he acted in accordance with the *Ensign Amendment*,[2] which provides that, "no funds may be used to distribute or make available to a prisoner any commercially published information or material that is sexually explicit or features nudity." 28 U.S.C. § 530c(b)(6)(D). Def. Mot. Dismiss at 2, Doc. 21. BOP regulations enacted in furtherance of the Ensign Amendment provide that:

> a) When commercially published information or material may not be ... made available to inmates due to statutory restrictions (for example, a prohibition on the use of appropriated funds to distribute or make available to inmates information or material which is sexually explicit or features nudity), the Warden or designee shall return the information or material to the publisher or sender. ....Staff shall provide the inmate with written notice of the action.

28 C.F.R. § 540.72(a).

> The pertinent definitions for application of the restriction are as follows: (2) Nudity means a pictorial depiction where genitalia or female breasts are exposed. (3) Features means the publication contains depictions of nudity or sexually explicit conduct on a routine or regular basis or promotes itself based upon such depictions in the case of individual one-time issues. Publications containing nudity illustrative of medical, educational, or anthropological content may be excluded from this definition.

28 C.F.R. § 540.72(b)(2)-(3). Def. Mot. Dismiss at 3, Doc. 21. Finally, the BOP issued Program Statement 5266.10 for incoming publications setting forth the procedures for restricting materials that are precluded under the Ensign Amendment because they are "detrimental to the security, discipline, or good order of the institution or if it might facilitate criminal activity." BOP Program Statement 5266.10, Incoming Publication (1996) attached as Exhibit "A" to Declaration of Marc Fischer.[3] The objectives of the Program Statement include that publications prohibited by law, such

---

[2] The *Ensign Amendment* was originally enacted as part of the Omnibus Consolidated Appropriations Act of 1997 (Public Law No. 104-208 §614, 110 Stat. 3009 (1996)).

[3] The court may properly consider matters subject to judicial notice and documents incorporated by reference in the pleading without converting the motion to dismiss to one for summary judgment. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Under the doctrine of incorporation by reference, a court may consider a document provided by the defendant which was not attached to the pleading if the plaintiff refers to the document extensively or if it forms the basis of the plaintiff's claim. *Ritchie*, 342 F.3d at 908; *see also Daniels-Hall*, 629 F.3d at 998. In this case, Plaintiff asserts that Defendant rejected his magazines based on BOP Program Statement 5266.10. Pl. Am. Compl. at 4, Doc. 9. Therefore, the Court may consider the content of Program Statement 5266.10, since Plaintiff refers to it and it forms the basis of his claim.

as by the *Ensign Amendment* are excluded from the prison to, among others, create a "safer environment for staff and inmates." *Id.* at 2. The specific procedures for restricting publications featuring nudity, defined as "genitalia or female breasts" are the publication be returned to the publisher with a letter to both the publisher and the inmate regarding the prohibition of such publication from the prison. *Id.* at p. 7. The Program Statement contains sample letters to assist the Warden in communicating that the publication is prohibited at the prison under the *Ensign Amendment*. *See* Def. Mot. Dismiss, Ex. A Decl. Marc Fisher, Doc. 21.

In Plaintiff's original complaint, Plaintiff stated that Defendant erroneously rejected magazines where a "bare female breast is exposed." Pl. Compl. at 3, Doc. 1. Plaintiff further argued that the law does not permit Defendant to reject a magazine for "one or two female breasts." *Id.* at 4. In Plaintiff's objections to Defendant's motion to dismiss, Plaintiff states that "simple nudity" in mainstream magazines (in this case, *Esquire* and *W*) differ from magazines known for sexually explicit photos, i.e., *Playboy*, *Penthouse*, and *Hustler*. Pl. Obj. Mot. Dismiss at 2-3. Finally, Plaintiff contends that the Court should ignore the "two to three nude photos" because of the remaining literary content in the magazines. *Id.* at 12.

## IV. Analysis

### A. Legal Standard for First Amendment Limitation on Nudity in Prisons

The First Amendment's liberty interest in communication by mail is not without limitations, and may be limited by regulations that are reasonably related to a legitimate governmental interest. *Thornburgh v. Abbott*, 490 U.S. 401, 404 (1989); *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995). Regulations regarding the review of incoming mail are evaluated under the four factor test set forth in *Turner v. Safley*, 482 U.S. 78 (1987). The *Turner* factors are (1) whether the regulations further a neutral and legitimate governmental objective and are rationally related to the objective; (2) if "alternative means of exercising the right" are available; (3) the impact that accommodation of the right will have on others at the facility; and (4) they are not an "exaggerated response" to facility concerns. *Thornburgh*, 490 U.S. at 414, 417-19. Courts uniformly hold that the *Ensign Amendment* and the Bureau of Prison's implementing regulations do not violate a prisoner's First Amendment rights. *Mauro v. Arpaio*, 188 F.3d 1054 (9th Cir. 1999) (en banc) (pretrial detainee's rights are not

violated by prohibition on material containing frontal nudity); *Harper v. Wallingford*, 877 F.2d 728 (9th Cir. 1989) (prisoner's rights are not violated by regulation withholding mail from organization espousing consensual sexual relationships between adult males and juvenile males); *Amatel v. Reno*, 156 F.3d 182 (D.C. Cir. 1998) (federal prisoner's First Amendment rights are not violated by Bureau of Prisons regulation prohibiting publications that are sexually explicit or contain nudity).

In addition, the language in BOP Program Statement 5266.10 is similar to restrictions in California's prison regulations that have been held to satisfy the *Turner* test as reasonably related to legitimate penological interests. *See Nelson v. Woodford*, 2006 WL 571359 (N.D. Cal. Mar. 2, 2006)[4] (California State Department of Corrections (CDC) regulations, Administrative Bulletin ("AB") 02/04 (Cal. Code Reg. tit. 15 § 3006),[5] banning the receipt by inmates of materials displaying frontal nudity upheld against First Amendment challenge based on Ninth Circuit reasoning in *Mauro*, 188 F.3d at 1059-63; *Williams*, 2007 WL 685857 (motion to dismiss granted as to First Amendment challenge to CDC regulations containing language similar to BOP Program Statement 5266.10.)

The legitimate penological interests supporting the BOP's Program Statement 5266.10 was recently upheld in *Ramirez v. Pugh*, 486 F. Supp. 2d 421 (M.D. Pa. 2007). In *Ramirez*, plaintiff/inmate challenged the BOP's restriction as applied to *Playboy* and *Penthouse* magazines. The court held that the *Ensign Amendment* and accompanying regulations met the reasonableness standard under *Turner* and did not violate an inmate's First Amendment rights. The court explained that the *Ensign Amendment* restrictions advance valid penological interests of rehabilitating sex offenders as well as the general inmate population's crimogenic culture and replace it with more prosocial attitudes. *Id.* at 428-33. The restrictions also served the valid penological interests of institutional security in preventing "inmate's sexual acting out, e.g., masturbation, consensual sex among inmates, incidents of exhibitionism, and sexual violence against inmates and staff." *Id.* at

---

[4] Defendants cited *Nelson* and *Williams v. Tristan*, 2007 WL 685857 (E.D. Cal. Mar. 5, 2007) in their motion to dismiss and served copies of these unreported opinions on Plaintiff, in accordance with Local Rule 133(i)(3)(ii).

[5] Cal. Code Reg. tit. 15 §3006 prohibits receipt by inmates of materials displaying frontal nudity and defines "sexually explicit material" as "material that shows frontal nudity of either gender, including the exposed female breast(s) and or genitalia of either gender." BOP Program Statement 5266.10 defines "nudity" as "a pictorial depiction where genitalia or female breasts are exposed."

433. The second *Turner* factor of an "alternative means" for exercising First Amendment rights was satisfied because the prison permitted a broad variety of publications that did not depict nudity or sexually explicit content. *Id.* at 435. The third *Turner* factor regarding impact of accommodation on others was met because allowing the publications would have a "profound impact" of, among others, violence against inmates and staff. *Id.* The final *Turner* factor was satisfied because there was no evidence of any reasonable alternative to the restrictions as the publications could not be limited to only certain inmates, nor a separate portion of the library constructed for viewing such publications. *Id.* at 437.

**B. Plaintiff's Complaint and First Amendment Limitation on Nudity in Prisons**

In the instant case, Defendants submitted the alleged nude content under seal, but the Court finds it unnecessary to make an independent finding of the nude content since Plaintiff admits the magazines contain "one or two female breasts," "simple nudity," and "two to three nude photos." Pl. Compl. at 3-4, Doc. 1; Pl. Obj. Mot. Dismiss at 2-3 & 12. Therefore, by Plaintiff's own admission, the Court deems the magazines to contain nudity in the form of bare female breasts.

Moreover, application of BOP Program Statement 5226.10 to the *Esquire* and *W* magazines containing female nudity satisfies the four factor *Turner* test. First, restricting the pictures of female nudity in the magazines serves legitimate penological interests of rehabilitating both sex offenders and the crimogenic culture of the general inmate population at USP Atwater toward more prosocial attitudes, values and behaviors. *Ramirez*, 486 F. Supp. 2d at 428-31. Application of BOP Program Statement 5226.10 to the pictures of female breasts in the *Esquire* and *W* magazines also serves the legitimate penological interests of security of inmates and staff at USP Atwater by preventing the risks of an inmate's sexual acts and sexual violence. *Id.* at 433-34. The second *Turner* factor of allowing the exercise of First Amendment rights while restricting pictures of female nudity in the *Esquire* and *W* magazines is met because the inmates at USP Atwater may still have access to broad array of publications that do not contain female nudity. The third *Turner* factor regarding the impact accommodation of the depictions of female nudity as shown in the *Esquire* and *W* magazines would have on USP Atwater's guards, and other inmates is profound since allowing the articles would lead

to a "ripple effect" of aggressive sexual acts against inmates and staff. *Id.* at 435. The fourth *Turner* factor of no ready alternatives is satisfied as applied to returning the *Esquire* and *W* magazines that contained the depictions of female breasts because the regulations require the return of the entire publication. *See* 28 C.F.R. § 540.72(a). By limiting the restrictions to only the specific publication containing the nudity and sexually explicit content, the restrictions were narrowly tailored thereby satisfying the final *Turner* factor for upholding the validity of Program Statement 5226.10 to the depictions of female breasts in the *Esquire* and *W* magazines. Accordingly, Plaintiff fails to state a claim against Warden Rios for returning the two magazines under the Ensign Amendment and Program Statement 5266.10.

### V. Conclusion and Recommendation

Accordingly, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the undersigned HEREBY RECOMMENDS that this action be DISMISSED, with prejudice, based on Plaintiff's failure to state a claim upon which relief may be granted under § 1983.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   January 30, 2012

UNITED STATES MAGISTRATE JUDGE